**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CATHERINE COFFMAN, <br><br> Plaintiff, <br><br> v. <br><br> POSHMARK, INC., MANISH CHANDRA, NAVIN CHADDHA, EBONY BECKWITH, JEFF EPSTEIN, JENNY MING, HANS TUNG, and SERENA J. WILLIAMS, <br><br> Defendants. | Case No. _____ <br><br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br><br> JURY TRIAL DEMANDED |

Plaintiff Catherine Coffman ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      This is a stockholder action brought by Plaintiff against Poshmark, Inc. ("Poshmark" or the "Company") and the members of Poshmark's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Poshmark to NAVER Corporation ("NAVER") (the "Proposed Transaction").

2.      On October 3, 2022, Poshmark entered into an Agreement and Plan of Merger with NAVER, NAVER's wholly owned subsidiary, Proton Parent, Inc. ("Proton Parent") and Proton Parent's wholly owned subsidiary, Proton Merger Sub, Inc. ("Merger Sub") (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, NAVER will acquire Poshmark for $17.90 in cash per share of Poshmark common stock.

3.      On November 25, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  Specifically, the Proxy Statement, which recommends that Poshmark stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs"); and (iii) the background of the Proposed Transaction.

4.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Poshmark stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5.      The special meeting for Poshmark stockholders to vote on the Proposed Transaction is currently scheduled for December 27, 2022.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Poshmark's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Poshmark's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of shares of Poshmark common stock.

10.     Defendant Poshmark is a Delaware corporation, with its principal executive offices located at 203 Redwood Shores Parkway, 8th Floor, Redwood City, California 94065.  Poshmark's shares trade on the Nasdaq Global Select Market under the ticker symbol "POSH."

11.     Defendant Manish Chandra founded the Company and has been Chairman of the Board and President, Chief Executive Officer, and a director of the Company at all relevant times.

12.     Defendant Navin Chaddha has been a director of the Company at all relevant times.

13.     Defendant Ebony Beckwith has been a director of the Company at all relevant times.

14.    Defendant Jeff Epstein has been a director of the Company at all relevant times.

15.    Defendant Jenny Ming has been a director of the Company at all relevant times.

16.    Defendant Hans Tung has been a director of the Company at all relevant times.

17.    Defendant Serena J. Williams has been a director of the Company at all relevant times.

18.    Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19.    Poshmark is a social media marketplace for new and secondhand style for women, men, kids, pets, home and more.  Poshmark combines the human connection of a physical shopping experience with the scale, reach, ease and selection benefits of eCommerce.  The Company has more than 80 million registered users across the U.S., Canada, Australia, and India.

### The Proposed Transaction

20.    On October 3, 2022, Poshmark announced that it had entered into the Proposed Transaction, stating, in relevant part:

> SEONGNAM-SI, South Korea & REDWOOD CITY, Calif.--(BUSINESS WIRE)-- Naver Corp. (KRX: 035420) ("Naver"), Korea's largest internet company, and Poshmark, Inc. (NASDAQ: POSH) ("Poshmark"), a leading social e-commerce marketplace for new and secondhand style, today announced that they have entered into a definitive agreement under which Naver will acquire all of the issued and outstanding shares of Poshmark for $17.90 in cash, representing an enterprise value of approximately $1.2 billion.[1] This represents a premium of 15% to Poshmark's closing stock price as of October 3, 2022, a 34% premium to the 30-day volume weighted average price, and a 48% premium to the 90-day volume weighted average price of Poshmark's shares.
> **Management Commentary**
>
> Choi Soo-Yeon, Chief Executive Officer of Naver:

4

"The combination will create the strongest platform for powering communities and re-fashioning commerce. Poshmark is the definitive brand for fashion in the United States that provides a social network for buying and selling apparel. Naver's leading technology in search, AI recommendation and e-commerce tools will help power the next phase of Poshmark's global growth."

"Poshmark is a natural fit for our business – our two companies share a common set of values and vision around content, community and empowerment. Bringing Naver and Poshmark together will immediately put us at the forefront of creating a new, socially responsible, and sustainable shopping experience designed around sellers of all sizes and interests – from individual and influencer sellers to professional sellers, brands and specialty boutiques – and a large, loyal, and highly engaged social community. We are excited to work closely with Manish and his talented team to create lasting value for all our stakeholders."

Manish Chandra, Founder and Chief Executive Officer of Poshmark:

"The opportunity to join forces with Naver – one of the world's leading and most innovative and successful internet companies – is a testament to the strength of our brand, operating model, and what we've built over the last decade with our talented team and amazing community. Our industry continues to evolve at a rapid pace, and we are excited to continue to lead the future of shopping by providing our community with an unparalleled experience that is simple, social, fun and sustainable."

"This is a highly compelling opportunity for our employees, who will benefit from being part of a larger, global organization with shared values and complementary strengths. This transaction also delivers significant and immediate value to our shareholders. Longer term, as part of Naver, we will benefit from their financial resources, significant technology capabilities, and leading presence across Asia to expand our platform, elevate our product and user experiences, and enter new and large markets. I look forward to partnering with Naver as we take our company into its next phase of growth."

**Redefining Commerce and Community Around a Shared Vision**

The inherent strengths of both companies lie in their unwavering commitment to content, community and empowerment:

- **Content.** Naver is home to the largest number of bloggers in Korea and the largest number of digital creators of stories (Wattpad) and comics (Webtoons) globally. Poshmark is a leader in creating unique styles and fashion trends, including the growing K-Fashion apparel segment.

5

- **Community.** Naver is the largest and longest-standing online community in Korea, where more than 36 million monthly users access its search portal and various online community services. Its metaverse platform, Zepeto, is the second largest metaverse app in the world, with a growing, vibrant community for members to create and share whatever they imagine. Naver's community also extends to other large, fast-growing, and highly engaged groups, including its K-Pop fandom community Weverse, which is jointly owned with BTS' management company, one of the most successful groups of all time. Poshmark is the destination of choice for more than 80 million registered users. Among them, active users spend approximately 25 minutes of their day buying and selling apparel online, and gather in-person at Posh Party Live events held in various cities around the world.
- **Empowerment.** Naver is dedicated to empowering the long tail – it is the largest enabler of e-commerce for small and medium-sized businesses in Korea and has revolutionized content creation by democratizing the publication of digital comics through Naver Webtoons. At Poshmark, anyone can easily list and sell what is hanging in their closet at home, and anyone can make a social impact through the promotion of socially responsible, sustainable commerce.

The transaction will create a global player in online fashion re-commerce by combining Poshmark's unique discovery-based social shopping platform and deeply engaged community with Naver's technological prowess in upleveling the e-commerce experience. Poshmark will also leverage Naver's proven expertise and track record in Asia and its significant expertise from backing and investing in other fashion and consumer-to-consumer (C2C) e-commerce platforms globally.

The combination accelerates Naver's strategy to build a global e-commerce community portfolio to capture the growth in large markets around the world, including Poshmark's home market of North America. Together, the companies expect to increase purchase conversion rates, deepen user engagement, create an industry leader in livestreaming commerce, and enhance the unique relationship- and discovery-based experiences that are driving fast-growing re-commerce verticals.

**Strategic and Financial Benefits**

- **Expands Long-Term Opportunity in Fashion Re-commerce and Creates Globally Distributed User Base with Influx of Younger Users:** The addition of Poshmark will expand and diversify Naver's search-driven e-commerce business into the global secondhand C2C market for fashion. The combination will also allow Naver to capitalize on the increasing consumer shift in fashion to online re-commerce, which is an $80 billion market today in the U.S. alone, and is expected to grow by 20% annually to $130 billion by 2025.[2]

Poshmark currently has a community of over 80 million registered users, across 90% of zip codes in the U.S. In 2021, the company generated approximately $2 billion in gross merchandise value (GMV) with a take rate of 20% and gross margin of 85%. Its primary demographic of millennials and Generation Z users is the largest shopping demographic for secondhand goods and a key driver of the circular economy and community-based platforms. One of Poshmark's strong appeals to the growing number of conscious consumption shoppers is the important role it plays in extending the lifecycle of millions of previously made items and reducing fashion's footprint. These users will expand and complement Naver's current user base.

- **Creates a Global Commerce Community with Access to Poshmark's Social Networking and Discovery-Based Shopping:** Naver is a proven community builder, connecting more than 28 million monthly users across its Naver Café platform – an open social community where users create their own groups to share content, ideas, and information broadly, across a large number of topics and categories – as well as its Metaverse and K-Pop fandom communities. Poshmark has created unique relationship-oriented "micro" communities that are based around social engagement with friends and family and discovery-based shopping. Poshmark's simple, easy, and community-centered fashion marketplace will give Naver access to a highly engaged and diversified community, where sellers become buyers and buyers become sellers, and add a global social networking element to Naver's portfolio of services.

- **Enhances Poshmark's User Experience with Naver's Unrivaled and Innovative Technology Offerings:** Poshmark will instantly benefit from Naver's deep technology stack and AI-based capabilities, including its smart lens image recognition and search technologies. These capabilities are highly complementary to Poshmark's product development strategy, and together will allow Poshmark to offer a new search and shopping experience by integrating Naver's shopping search engine, which allows users to enter additional search keywords according to their preference on colors, designs, and materials. Specifically, with access to Naver's image recognition technology, Poshmark users will be able to identify where to find and buy products by scanning objects and shopping through the camera on their phones without needing to know the exact name of the product. This capability will make it easier to both identify new products and sell items, enhancing the user experience.

- **Leverages Naver's Proven Data Analytics Technology to Improve Marketing and Engagement Strategies to Make Poshmark the Platform of Choice for Buyers and Sellers:** As the largest advertising platform in Korea, Naver's ad-serving infrastructure will play an instrumental role as Poshmark explores rolling out ads to its deeply engaged community. For instance, Poshmark will be able to leverage Naver's "Biz Advisor" and "Analytics" AI analytical tools, which analyze sales statistics to manage data more effectively, and in turn, increase the number of sellers

on Poshmark's platform. These enhancements will dramatically advance Poshmark's service offering, resulting in greater customer acquisition, retention, and buyer conversion, as well as enhance its community engagement and user experiences. With Naver Pay commanding the largest share of online payment processing in Korea, the combination will also enable Poshmark to develop innovative payment solutions to expand its ecosystem of buyers and sellers. Additionally, with Naver's technologies, Poshmark will be able to provide more suitable product recommendations for customers after analyzing products, user communities, and the closets of the users' favorite sellers in real-time. Together, the companies can develop a service that allows users to search with shopping keywords so that the most suitable product will be recommended to the right user.

- **Enables Global Live Commerce Adoption:** Livestream shopping is a key driver of e-commerce in China and Korea (and increasingly in the U.S.) today, allowing shoppers to buy products in real-time through live video broadcasts, enabling greater insights and more clarity around purchasing decisions. Naver's Shopping Live solution is the leader in Korea, one of the world's largest live shopping markets, and an essential feature of Naver's e-commerce platform with over $25 billion in GMV transacted in 2021. Naver expects that the enablement and enhancement of live streaming capabilities within the Poshmark platform will transform the shopping and selling experience and strengthen Poshmark's community by allowing for greater social networking and engagement.

- **Further Expands Global Footprint for Both Naver and Poshmark:** Poshmark will benefit from Naver's global presence in high-growth markets, particularly in Korea, one of the world's most innovative and highest penetrated e-commerce industries. This is where Naver is the leading search engine and largest e-commerce channel, and the only search technology company in the world that has successfully expanded into an e-commerce platform. Naver's footprint also includes Japan, where it has joint ownership in Z Holdings, one of the world's largest internet service groups, with assets such as Yahoo! Japan and Japan's leading smartphone messaging platform, LINE, which Naver created and launched in 2011 and now operates in over 230 countries and is used by more than 70% of those populations. With Naver's support, Poshmark will pursue a broader international expansion strategy in the medium-term, including into other developed markets in Asia.

In addition, this transaction provides Naver with an enhanced foothold in the U.S., expanding its international profile, which it has steadily increased both organically and through investments over the past 20 years. Naver will build on its existing U.S. footprint, including Webtoon Entertainment, which is based in Los Angeles and extremely popular with younger audiences, and its $600 million acquisition of Wattpad in 2021. Naver has benefited from the recent global digital disruption and transformation of media and publishing through Wattpad and Webtoon Entertainment, and looks to extend their growth in the region with the addition of Poshmark.

8

- **Significant Synergy Potential:** The transaction is expected to generate significant revenue and cost synergies, consisting primarily of:
  - Re-acceleration of annual revenue growth beyond 20% in the near-term by leveraging Naver's advertising capabilities to drive further monetization, accelerating investment to drive growth overseas, and expanding live commerce adoption.
  - Approximately $30 million in run-rate annual cost savings within 24 months post-closing including through rationalization of public company costs and driving of higher operating leverage across operating and other cost functions.

**Operating Structure and Leadership**

Upon completion of the transaction, Poshmark will become a standalone U.S. subsidiary of Naver and will continue to be led by CEO Manish Chandra and Poshmark's current management team.

Poshmark will continue to operate under its existing brand, as well as maintain its employee base, Poshmark community, and headquarters in Redwood City, California.

**Transaction Details**

The transaction, which was unanimously approved by both Naver's and Poshmark's Boards of Directors, is expected to close by the first quarter of 2023, subject to approval by Poshmark stockholders and the satisfaction of certain other customary closing conditions. The transaction is not contingent on any financing. Naver has secured voting and support agreements with certain stockholders of Poshmark, representing approximately 77% of the outstanding voting power of Poshmark common shares.

The transaction is expected to be funded with Naver's cash balances and other existing financing sources.

## The Materially Incomplete and Misleading Proxy Statement

21.     On November 25, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that Poshmark stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that

support the fairness opinion provided by the Company's financial advisor Goldman Sachs; and

(iii) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning Financial Projections for Poshmark*

22.     The Proxy Statement fails to disclose material information concerning the financial

projections for the Company.

23.     For example, the Proxy Statement fails to disclose the line items underlying the

Company's projected: (i) Adjusted EBITDA (Unburdened by SBC); and (ii) Unlevered Free Cash

Flow.

*Material Misrepresentations and/or Omissions Concerning Goldman Sachs' Financial Analyses*

24.     The Proxy Statement fails to disclose material information concerning Goldman

Sachs' financial analyses.

25.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the

Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the

net present value of cash tax savings from net operating loss carryforwards; and (iii) the inputs and

assumptions underlying the discount rates ranging from 12.5% to 15.0%.

26.     With respect to Goldman Sachs' *Premia Analysis*, the Proxy Statement fails to

disclose: (i) the identities of the transactions observed; and (ii) the individual premia for each

transaction.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

27.     The Proxy Statement fails to disclose material information concerning the

background of the Proposed Transaction.

28.     For example, the Proxy Statement states that:

[O]n August 15, 2022, the Company and Strategic Party D entered into a non-disclosure agreement that included a standstill provision that prohibited Strategic Party D, for an agreed-upon period from the date of the agreement, from offering to acquire or acquiring Poshmark, and from taking certain other actions, including soliciting proxies, without the prior consent of Poshmark. Such non-disclosure agreement contained a so-called "don't ask, don't waive" provision but permitted Strategic Party D to make certain confidential proposals to the Company and was subject to certain customary fall-away provisions to the standstill in the event of the entry into, commencement or public announcement of certain change of control transactions involving the Company and any third party.

Proxy Statement at 37-38. The Proxy Statement fails to disclose the type of "certain confidential proposals" Strategic Party D was permitted to make to the Company under the "don't ask, don't waive" standstill provision, including whether those "certain confidential proposals" contemplate an acquisition of Poshmark. Additionally, the Proxy Statement fails to disclose whether any standstills executed by interested parties are still in effect and precluding any party from submitting a topping bid for the Company.

29.     In sum, the omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of Goldman Sachs," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Poshmark will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Poshmark**

30.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

11

31.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Poshmark is liable as the issuer of these statements.

32.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

33.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

35.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

36.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

37.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

**Claims for Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

38.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39.     The Individual Defendants acted as controlling persons of Poshmark within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Poshmark and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

40.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

41.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

42.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

43.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as

13

controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Poshmark, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  December 2, 2022                          **ACOCELLI LAW, PLLC**


                                        By  */s/ Richard A. Acocelli*
                                            Richard A. Acocelli
                                            33 Flying Point Road, Suite 131
                                            Southampton, NY 11968
                                            Tel: (631) 204-6187
                                            Email: racocelli@acocellilaw.com

                                            *Attorneys for Plaintiff*